IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUSTIN GOSELIN, | ) |
|     Plaintiff | ) ) ) |
| v. | ) ) |
| | )   Case No. _____ |
| ILLINOIS DEPARTMENT OF STATE POLICE, TAD WILLIAMS, in his individual capacity, and CHRISTOPHER TRAME, in his individual capacity, | ) )   Jury Demand ) ) ) |
|     Defendants | ) ) |

## COMPLAINT

Plaintiff, Justin Goselin, by and through his attorneys, hereby complains of Defendants, Illinois Department of State Police, Tad Williams, and Christopher Trame, as follows.

### Nature of the Action

1. This is an employment discrimination and civil rights case. Defendant Illinois Department of State Police ("ISP") has engaged in unlawful employment practices against Goselin in violation of the Americans With Disabilities Act of 1990, As Amended, 42 U.S.C. § 12101 et seq. ("ADA"). Goselin brings this civil action seeking legal and equitable remedies under the statute. Additionally, Defendants Tad Williams and Christopher Trame deprived Goselin of his constitutional rights under color of state law, for which Goselin seeks redress pursuant to 42 U.S.C. § 1983.

### Jurisdiction and Venue

2. This Court has personal jurisdiction over Defendant ISP because ISP is a state agency located in the State of Illinois, and the acts giving rise to this action occurred within this state.

3. This Court has personal jurisdiction over Defendants Williams and Trame because Williams and Trame reside in the State of Illinois, and the acts giving rise to this action occurred within this state.

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 1983, and U.S. Const. Amends. I, IV, and XIV, because the claims herein arise under laws of the United States and the United States Constitution.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), because Defendant ISP is a state agency maintaining substantial offices and contacts within this judicial district, so it is a resident of this judicial district.

**Parties**

6. Plaintiff Justin Goselin is an individual resident of Bourbonnais, Kankakee County, Illinois.

7. At all relevant times Goselin was an "employee" of Defendant ISP as that term is defined in 42 U.S.C. § 12111(4).

8. Defendant ISP is the state police force of Illinois and is an agency of the State of Illinois. ISP has offices and conducts substantial business in Cook County, Illinois.

9. At all relevant times, ISP was Goselin's "employer" as that term is defined in 42 U.S.C. § 12111(5).

10. Defendant Colonel Tad Williams is an individual resident of Macon County, Illinois. Goselin asserts claims and seeks remedies against Williams in his individual capacity.

11. At all relevant times Williams was an "employee" of Defendant ISP as that term is defined in 42 U.S.C. § 12111(4), and ISP was Williams's "employer" as that term is defined in 42 U.S.C. § 12111(5).

12. Defendant Lieutenant Colonel Christopher Trame is an individual resident of Clinton County, Illinois. Goselin asserts claims and seeks remedies against Trame in his individual capacity.

13. At all relevant times Trame was an "employee" of Defendant ISP as that term is defined in 42 U.S.C. § 12111(4), and ISP was Trame's "employer" as that term is defined in 42 U.S.C. § 12111(5).

## Facts

14. ISP employed Goselin as a Trooper beginning in 2000.

15. On or around December 31, 2006, Goselin was injured while on duty when the squad car in which he was a passenger rolled over and crashed. As a result of the crash, Goselin suffered a herniated disc and was placed on disability leave until February 2007.

16. On or around March 2, 2007, Goselin was involved in another crash while on duty. He was outside of his patrol car, responding to an officer requesting assistance in a snowstorm, when another vehicle collided with Goselin's patrol car and pushed Goselin and his car into a nearby ditch, causing further injuries to his back. As a result of these on-duty injuries, Goselin was placed on disability leave until March 7, 2007, when he returned to work on medical duty status.

17. From March 7, 2007 until around January 29, 2009, Goselin remained on light duty as a Staff Officer. On January 29, 2009, Goselin's physician returned him to full duty, and the ISP Medical Review Board closed his case.

18. Goselin's medical condition worsened in late 2009. He began to suffer sciatica down both of his legs and his groin. On January 20, 2010, Goselin underwent surgery to address these issues. The extensive surgery involved a spinal cage fusion and the insertion of an artificial titanium disc into his spine.

19. Goselin appeared before the ISP Medical Review Board in or around 2009 in connection with his on-duty injuries. As a result of those hearings, then-Colonel Greg Muller, who was the Medical Review Board Chairman for the ISP Division of Administration, suggested that Goselin utilize the reasonable accommodation of an outside vest carrier for the ballistic body armor, in order to ease the pain and pressure on Goselin's back.

20. Goselin took Muller's suggestion to ISP Lieutenant Jeff Blair, who was then acting as District Commander. Blair approved and authorized the reasonable accommodation of an outside vest carrier.

21. Before receiving that accommodation, Goselin had previously worn an inner ballistic vest carrier while on patrol. An inner vest carrier fits tightly around the wearer's body, is worn under the shirt, and was standard for Troopers while on patrol. On the other hand, an outer vest carrier is worn over the shirt, applies less pressure to the wearer's back, and can be adjusted and more easily removed.

22. In early 2010, Lieutenant Blair advised Goselin to take a position as a Commercial Vehicle Enforcement Officer ("CVEO"), which would allow him to return to duty with the outer vest and web gear to accommodate his medical restriction.

23. Goselin returned to duty in July 2010 as a Commercial Vehicle Enforcement Officer, after passing an independent medical examination and an annual fitness test. Upon his return to duty, Goselin wore an outer vest carrier at all relevant times while on duty.

24. As a result of his medical condition, Goselin has a seven-to-ten-pound weight restriction around his waist and a seven-to-ten-pound weight restriction around his shoulder; he does not have any lifting restrictions.

25. With the reasonable accommodation of wearing an outer vest carrier, Goselin was fully qualified to perform his job duties.

26. Goselin's supervising officers observed him wearing an outer vest carrier, and ISP was aware of this reasonable accommodation.

27. Before June 2016, ISP never told Goselin that he was not permitted to wear an outer vest carrier, and he was never disciplined or counseled for wearing the outer vest.

28. On or around June 26, 2016, ISP notified Goselin that he would no longer be allowed to wear an outer vest while on duty because ISP could not locate documentation to support the claim that Goselin had been granted that accommodation for roughly seven years.

29. ISP did not initiate any dialogue with Goselin to discuss this change in the reasonable accommodation that had been given to him.

30. On or around August 22, 2016, ISP removed Goselin from duty and placed him on a service-connected leave of absence, alleging that his medical restrictions rendered him unable to perform his job duties.

31. At the beginning of that leave, ISP applied paid time off that Goselin had remaining through Workers' Compensation in connection with his most recent on-duty injury. After Goselin's remaining Workers' Compensation leave was exhausted, he began to use up his accrued time off.

32. Goselin filed a grievance through his labor union on August 24, 2016, complaining of the withdrawal of his reasonable accommodation and removal from duty.

33. On or around March 1, 2017, Goselin contacted ISP's Equal Employment Opportunity ("EEO") office, which was responsible for processing requests for reasonable accommodations, for assistance with respect to his denial of a reasonable accommodation. ISP's EEO officers, Sergeant Yvette Ross and Master Sergeant John Merrifield, told Goselin that they could not help him because Goselin had a grievance pending, and the officers refused to provide any meaningful assistance.

34. On or around March 15, 2017, Goselin submitted a memorandum to ISP's Director requesting that the employer provide a reasonable accommodation for Goselin's medical condition. ISP rejected the memorandum and told Goselin that he must run the request through his chain of command. Goselin resubmitted the memorandum through the chain of command, but ISP never provided any substantive response to that request for a reasonable accommodation, and it is unclear whether the memorandum was ever forwarded to the Director.

35. On or around March 22, 2017, Goselin, through his attorney, submitted a formal request to ISP that the employer provide a reasonable accommodation for Goselin's medical condition. ISP responded that Goselin must run the request through his chain of command. ISP never provided any substantive response to that request for a reasonable accommodation.

36. On March 24, 2017, Goselin filed a charge of discrimination against ISP with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Human Rights Commission, alleging disability discrimination and failure to provide a reasonable accommodation under the ADA.

37. In or around February and March 2017 – while Goselin was still on a service-connected leave of absence – Colonel Tad Williams and Lieutenant Colonel Christopher Trame

authorized and initiated a covert investigation and surveillance of Goselin. Williams and Trame gave this investigation the code name "Operation Close to the Vest."

38. The investigation was based on an alleged anonymous tip that Goselin had been observed doing heavy weightlifting at a gym and that he had thus purportedly committed Workers' Compensation fraud.

39. Goselin did not have any lifting restrictions, so even if he had been lifting heavy weights, this would be consistent with the limitations of his disability.

40. Williams and Trame instructed other ISP officers, including Major Steve Loan and Captain Richard Wilk, to execute this surveillance. Based on these instructions, officers surveilled or attempted to surveil Goselin at his home, at various business locations which Goselin owned or had an interest in, and at his wife's place of employment.

41. Acting on Williams's and Trame's orders, officers investigated and reviewed Goselin's medical records and history. They also searched through his personal information, including accessing his wife's Facebook page to gather photographs of Goselin and his family.

42. Acting on Williams's and Trame's orders, officers also requested a full criminal inquiry on Goselin from the Statewide Terrorism and Intelligence Center ("STIC"). That inquiry involved a search of Goselin's personal and financial information, including a review of all of Goselin's residences and vehicles, and his history of travel involving border crossings.

43. An ISP officer must have reasonable cause to order a STIC criminal inquiry into an individual. Williams and Trame did not have any reasonable cause to order the STIC inquiry into Goselin.

44. The information gathered through this investigation was circulated to several ISP officers, and, on information and belief, it was eventually presented to Williams and Trame.

45. In connection with their investigation, Williams and Trame did not contact the Division of Internal Investigations, which is responsible for investigating allegations of misconduct against ISP officers. They also did not contact Tristar, a contractor used by ISP and the State of Illinois to make Workers' Compensation determinations and which investigates claims for Workers' Compensation benefits where required.

46. The so-called "Operation Close to the Vest" revealed no wrongdoing by Goselin.

47. Neither Williams, Trame, nor any other ISP officer informed Goselin of this surveillance and investigation. Goselin did not become aware that it had taken place until around May 2017, when ISP produced documents to Goselin's labor union related to his contract grievance.

48. In its annual performance evaluation for the year 2016, ISP gave Goselin a substantially lower rating than he had received in previous years, because ISP had placed Goselin on service-connected leave for more than half of the relevant rating period.

49. In or around March 2017, ISP officers contacted the unit responsible for administering Workers' Compensation benefits seeking to claw back the payment of benefits Goselin had received from the period of August 2016 through March 2017, when ISP had placed Goselin on service-connected leave of absence.

## Exhaustion of Administrative Remedies

50. On March 24, 2017, Goselin dually filed Charge No. 440-2017-02815 with the EEOC and the Illinois Human Rights Commission against ISP, alleging disability discrimination and failure to provide a reasonable accommodation under the ADA. On September 13, 2017, he amended his charge to include allegations that ISP retaliated against Goselin after he contacted his supervising officers regarding ISP's withdrawal of his reasonable accommodation.

51. After November 3, 2017, Goselin received a Dismissal and Notice of Right to Sue from the EEOC dated November 3, 2017. Accordingly, Goselin has exhausted his administrative remedies under federal law.

### Count One – Failure to Provide Reasonable Accommodation Under ADA

52. Plaintiff incorporates paragraphs 1 through 51 herein as if set forth verbatim.

53. Count One is asserted against Defendant ISP.

54. At all relevant times, Goselin was a "qualified individual" as that term is defined under 42 U.S.C. § 12111(8), as he could perform the essential functions of the employment position he held with or without a reasonable accommodation.

55. At all relevant times, Goselin had a "disability" as that term is defined under 42 U.S.C. § 12102, as he had one artificial titanium disc in his spine and a spinal cage fusion as a result of on-duty injuries, which constituted a physical impairment that substantially limited one or more of Goselin's major life activities.

56. Since at least 2009, ISP has been aware of Goselin's disability.

57. Beginning in or around 2009, ISP granted a reasonable accommodation to Goselin's disability by allowing him to wear an outer vest carrier while on duty. That accommodation did not impose an undue hardship on the operation of ISP's business.

58. When ISP unilaterally withdrew Goselin's reasonable accommodation on or around June 26, 2016, ISP discriminated against Goselin on the basis of disability by not making reasonable accommodations in violation of 42 U.S.C. § 12112.

59. ISP further discriminated against Goselin when it removed him from duty on or around August 22, 2016 as a result of its unilateral withdrawal of Goselin's reasonable accommodation.

60. As a result of ISP's unlawful employment practices, Goselin is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. § 1981a.

61. Goselin is further entitled to permanent injunctive relief against disability discrimination pursuant to 42 U.S.C. §§ 12117 and 2000e-5.

62. Goselin is entitled to recover attorney and expert fees and court costs in accordance with 42 U.S.C. § 12205.

### Count Two – Retaliation Under ADA

63. Plaintiff incorporates paragraphs 1 through 51 herein as if set forth verbatim.

64. Count Two is asserted against Defendant ISP.

65. At all relevant times, Goselin was a "qualified individual" as that term is defined under 42 U.S.C. § 12111(8), as he could perform the essential functions of the employment position he held with or without a reasonable accommodation.

66. At all relevant times, Goselin had a "disability" as that term is defined under 42 U.S.C. § 12102, as he had one artificial titanium disc in his spine and a spinal cage fusion as a result of on-duty injuries, which constituted a physical impairment that substantially limited one or more of Goselin's major life activities.

67. Since at least 2009, ISP has been aware of Goselin's disability, and ISP granted Goselin a reasonable accommodation beginning around 2009.

68. After ISP unilaterally withdrew Goselin's reasonable accommodation on or around June 26, 2016, Goselin engaged in activity protected under the ADA by opposing ISP's discriminatory employment practices in good faith by filing a grievance with ISP, by making

multiple requests that his reasonable accommodation be returned, and by filing a charge of discrimination with the EEOC.

69. ISP retaliated against Goselin for his protected opposition activities in violation of 42 U.S.C. § 12203 by launching an unwarranted, covert surveillance operation against Goselin; by giving Goselin a relatively poor performance rating; by ISP's Equal Employment Opportunity office refusing to assist Goselin while his grievance was pending; and by attempting to claw back Goselin's workers' compensation benefits.

70. Goselin is entitled to permanent injunctive relief against retaliation for his protected activities under the ADA pursuant to 42 U.S.C. §§ 12117 and 2000e-5.

71. Goselin is entitled to recover attorney and expert fees and court costs in accordance with 42 U.S.C. § 12205.

## Count Three – Violations of Constitutional Rights Under 42 U.S.C. § 1983

72. Plaintiff incorporates paragraphs 1 through 51 herein as if set forth verbatim.

73. Count Three is asserted against Defendants Williams and Trame in their individual and personal capacity.

74. The First and Fourteenth Amendments of the U.S. Constitution protect individuals' right to privacy.

75. In or around February and March 2017, Defendants Williams and Trame initiated a covert ISP surveillance of Goselin, under the code name "Operation Close to the Vest." Williams and Trame had no reasonable justification for the investigation.

76. This improper and unreasonable investigation included officers surveilling or attempted to surveil Goselin at his home, at various business locations which Goselin owned or had an interest in, and at his wife's place of employment; searches of Goselin's medical records

and history and his personal information, including accessing his wife's Facebook page to gather photographs of Goselin and his family; and a full STIC criminal inquiry without reasonable cause.

77. Defendants Williams and Trame used this unjustified investigation to invade Goselin's privacy under color of state law through the positions they held with ISP.

78. Because Williams and Trame invaded Goselin's privacy without any legitimate justification, they violated his constitutional rights under the First and Fourteenth Amendments.

79. Furthermore, the Fourth and Fourteenth Amendments of the U.S. Constitution protect individuals in their persons, houses, papers, and effects from unreasonable searches and seizures by government employers and their agents.

80. Goselin had a reasonable expectation of privacy with respect to his personal, financial and medical records and information, as well as his travel history and his family's personal information. He also had a reasonable expectation that he would not be covertly surveilled by his coworkers, without cause, on the instruction of his superiors. Goselin's expectation of privacy was both subjectively and objectively reasonable.

81. The search conducted by Williams and Trame, codenamed "Operation Close to the Vest," was entirely unreasonable. It was not justified at its inception, as it was based on a tip that was not credible and was commenced without any preliminary gathering of information. Further, an ISP officer must have reasonable cause to order a STIC inquiry, and Williams and Trame had no cause for their STIC inquiry into Goselin. The unreasonableness of the search was confirmed when the full investigation revealed no wrongdoing whatsoever by Goselin.

82. Additionally, the search was not reasonably related in scope to the alleged circumstances which Defendants maintain justified the interference in the first place. The

categories of information and records that were investigated by Williams and Trame were in no way related to any alleged misrepresentations by Goselin with respect to his workers' compensation claims.

83. By subjecting Goselin to an unreasonable search under color of state law, Williams and Trame violated Goselin's constitutional rights under the Fourth and Fourteenth Amendments.

84. Goselin brings this cause of action pursuant to 42 U.S.C. § 1983 seeking redress for Williams's and Trame's unconstitutional violations of Goselin's rights of privacy and freedom from unreasonable searches.

85. Through their involvement in ordering and directing this unreasonable investigation, Defendants Williams and Trame were personally responsible for the deprivation of Goselin's constitutional rights.

86. As a result of Williams's and Trame's violations of Goselin's constitutional rights, Goselin is entitled to recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to reputation, and other non-pecuniary losses, with prejudgment interest, pursuant to 42 U.S.C. § 1983.

87. Further, because Williams's and Trame's actions were motivated by evil intent, and because Williams and Trame showed a reckless and callous indifference to Goselin's constitutionally-protected rights, Goselin is entitled to recover punitive damages against those Defendants.

88. Goselin is entitled to recover his reasonable attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988.

## PRAYER

WHEREFORE, Plaintiff Justin Goselin prays for the following relief:

A. A permanent injunction restraining and enjoining Defendant ISP from engaging in unlawful employment practices based on disability;

B. A permanent injunction restraining and enjoining Defendant ISP from retaliating against Goselin for his opposition to ISP's unlawful employment practices;

C. A permanent injunction restraining and enjoining Defendants Williams and Trame from depriving Plaintiff of his constitutional rights of privacy and freedom from unreasonable searches;

D. Compensatory damages under the ADA and under 42 U.S.C. § 1983;

E. Punitive damages under 42 U.S.C. § 1983;

F. Prejudgment and post-judgment interest at the rates provided by law;

G. Attorney and expert fees and all court costs;

H. Such other and further relief to which plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in accordance with federal law.

Dated January 31, 2018.

        Respectfully submitted,

        /s/ Joel D'Alba
        Joel D'Alba
        Asher, Gittler, & D'Alba, Ltd.
        200 W. Jackson Blvd., Suite 720
        Chicago, IL 60606
        312/263-1500 (phone)
        312/263-1520 (fax)
        jad@ulaw.com

        *Attorneys for Plaintiff*